[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13639

_____

D.C. Docket No. 1:19-cv-01707-TCB

DONRICH YOUNG,

Plaintiff - Appellant,

versus

GRAND CANYON UNIVERSITY, INC.,
GRAND CANYON EDUCATION, INC.,
d.b.a. Grand Canyon University,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 16, 2020)

Before WILSON, NEWSOM and ANDERSON, Circuit Judges.

NEWSOM, Circuit Judge:

This appeal involves a poorly written federal regulation.  (No sense in beating around the bush.)  One section of that regulation pretty clearly prohibits a college or university that accepts federal student-loan money from enforcing pre-dispute arbitration agreements and class-action waivers when a student brings what the regulation calls a "borrower defense claim."  34 C.F.R. § 685.300(e)–(f) (2016).  The regulation goes on, though—and this is where the disagreement lies—to define "borrower defense claim" to mean "a claim that is or could be asserted as a borrower defense as defined in § 685.222(a)(5), including a claim other than one based on § 685.222(c) or (d) that may be asserted under § 685.222(b) if reduced to judgment."  *Id*. § 685.300(i)(1).  Boiled to its essence, the question here is whether the phrase "including a claim other than" means to *include* or *exclude* claims "based on § 685.222(c) or (d)"—which, respectively, refer to claims alleging breach of contract and substantial misrepresentation.

The district court interpreted that phrase to *exclude* breach-of-contract and misrepresentation claims from § 685.300(i)(1)'s definition of "borrower defense claim."  Accordingly, the court ordered the borrower-plaintiff in this case to arbitration in accordance with an agreement that he had signed in conjunction with his application for admission to a for-profit university.  Because we hold, to the

2

contrary, that § 685.300(i)(1) defines "borrower defense claim" to *include* breach-of-contract and misrepresentation claims—and thus to shield those claims from mandatory arbitration—we will reverse.

## I

## A

Before diving into this case's facts and procedural history, we'll canvass the governing regulatory framework. The Federal Direct Student Loan Program permits college students to obtain loans directly from the federal government to finance their higher educations. *See* 20 U.S.C. § 1087a–1087h. Schools accepting federal student-loan money must enter into agreements with the Secretary of Education that include provisions that "the Secretary determines are necessary to protect the interests of the United States and to promote the purposes of [the program]." *Id*. § 1087d(a)(6); *see also* 34 C.F.R. § 685.300(b)(11).

As particularly relevant here, federal law directs the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan[.]" 20 U.S.C. § 1087e(h). At the program's inception, the Secretary promulgated the first iteration of the "borrower defense rule." *See* 34 C.F.R. § 685.206(c) (1995). That rule allowed a borrower to assert, as a defense to repayment of his loan, "any act or omission of the school attended by the student that would give rise to a cause of action against

the school under applicable State law." *Id*. § 685.206(c)(1). The rule didn't require the borrower to sue the school itself; he had only to assert the defense to the Secretary. *See generally id*. If he successfully did so, the Secretary would forgive the student-loan debt and then (in his discretion) sue the offending institution for reimbursement of the forgiven amount. *Id*. § 685.206(c)(2)–(3).

Fast-forward to 2016 when President Obama's Department of Education amended these regulations and codified the changes in 34 C.F.R. § 685.222 and § 685.300. In the newly promulgated § 685.222, the Secretary of Education expanded the scope and types of available borrower defenses. Section 685.222(a)(5) first provides a broad, general definition of "borrower defense[s]": "[A] 'borrower defense' refers to an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided," and can be invoked either as a "defense to repayment of amounts owed [but not yet paid] to the Secretary" or as a "right to recover amounts previously collected by the Secretary." *Id.* § 685.222(a)(5).

Subsections (b), (c), and (d) of § 685.222 go on to specify three instances in which borrowers have borrower defenses. (There may be others; the regulations don't, at least explicitly, purport to limit borrower defenses to those designated in subsections (b), (c), and (d).) Subsection (b) provides that a borrower has a

4

borrower defense if he "has obtained against the school a nondefault, favorable contested judgment based on State or Federal law in a court or administrative tribunal of competent jurisdiction." *Id*. § 685.222(b).  Subsection (c) states that a borrower has a borrower defense if his school "failed to perform its obligations under the terms of a contract with the student." *Id*. § 685.222(c).  And subsection (d) provides that a borrower has a borrower defense if the school or any of its representatives or affiliates "made a substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." *Id*. § 685.222(d).

Taking stock—the Obama-era[1] 34 C.F.R. § 685.222(a)(5) provides a general definition of "borrower defense" as "refer[ring]" to "an act or omission of the school" that the borrower can then assert (to the Secretary) as a defense to repayment or as a basis to recover previously paid amounts.  Subsections (b), (c), and (d) go on to specify at least three instances in which a borrower "has" a borrower defense—when he has obtained a favorable contested judgment against the school, when the school breached a contract with the student, or when the

---

[1] We say "Obama-era" because President Trump's Department of Education amended the borrower-defense regulations in 2018.  Those amendments, though, apply only to loans distributed on or after July 1, 2020, and are therefore inapplicable here. *See* 34 C.F.R. § 685.300 (2020); *see also* 84 Fed. Reg. 49788, 49788 (Sep. 23, 2019).

school or one of its representatives or affiliates made a substantial misrepresentation. *Id*. § 685.222(b)–(d).

Next—and importantly here, for reasons we will explain—the Obama-era § 685.300 prohibited schools from entering into or relying on pre-dispute arbitration agreements and class-action waivers with students "with respect to any aspect of a *borrower defense claim*." *Id*. § 685.300(e)–(f) (emphasis added). A school that had already included pre-dispute arbitration provisions or class-action waivers in agreements with students had to notify them that the school wouldn't seek to enforce those terms. *Id*. § 685.300(f)(3)(i)–(ii). The same regulation goes on to define "borrower defense claim" as "a claim that is or could be asserted as a borrower defense as defined in § 685.222(a)(5), including a claim other than one based on § 685.222(c) [*i.e.*, breach of contract] or (d) [*i.e.*, substantial misrepresentation] that may be asserted under § 685.222(b) if reduced to judgment." *Id*. § 685.300(i)(1). This case turns, pretty much entirely, on the meaning of § 685.300(i)(1)'s phrase "including a claim other than . . . ."

## B

Now to the facts. Plaintiff Donrich Young was enrolled in a doctoral-degree program at defendant Grand Canyon University. He took out federal loans to pay for the program, and Grand Canyon made him sign a comprehensive arbitration agreement as part of his admissions application. In it, Young agreed that "that any

6

dispute arising from my enrollment, no matter how described, pleaded, or styled, shall be resolved by binding arbitration" and that "[b]oth I and the School irrevocably agree that any dispute between us shall be submitted to arbitration." The provision further specified that any lawsuit filed in violation of the agreement "shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement."

Young's underlying complaint is this:  Grand Canyon represents that students can complete a doctoral degree in 60 credit-hours.  Young alleges, however, that Grand Canyon obfuscates how many hours it *actually* takes to complete a doctoral program and, in fact, has designed its program so that a student likely can't finish in 60 hours.  According to Young, Grand Canyon requires students to take and pay for additional "research continuation courses," and he contends that Grand Canyon's assertion that students can complete a doctorate in 60 hours constitutes a material misrepresentation.  Young didn't complete his doctoral degree because he didn't finish his dissertation on time, and, as a result, had to pay for three additional research-continuation courses.

During Young's time at Grand Canyon, the Obama-era borrower-defense regulations went into effect, and Grand Canyon notified him that it wouldn't seek to enforce pre-dispute arbitration agreements and class-action waivers "if [Young]

assert[ed] a borrower defense claim, as that term is defined in 34 [C.F.R.] § 685.300(i)(1)."

## C

Young and seven others filed a class-action complaint against Grand Canyon in federal court. They brought claims for breach of contract, intentional misrepresentation, violations of the Arizona Consumer Fraud Act, A.R.S. § 55-1521 *et seq.* (which we'll call the "statutory-fraud claim"), and unjust enrichment, as well as a request for a declaratory judgment. The district court dismissed the claims brought by all plaintiffs except Young on personal-jurisdiction grounds.

Grand Canyon then moved to compel arbitration pursuant to the agreement that Young had signed as part of his application for admission. The district court granted the motion to compel, holding that Young's breach-of-contract, misrepresentation, and statutory-fraud claims were not "borrower defense claims" as defined in § 685.300(i)(1) and so were not subject to the regulations' prohibition on pre-dispute arbitration agreements. In particular, the court held that the phrase "including a claim other than" in § 685.300(i)(1) operated to *exclude* breach-of-contract claims (§ 685.222(c)) and misrepresentation claims (§ 685.222(d)). Construing the regulation to include breach-of-contract and misrepresentation claims, the court thought, would "render various provisions superfluous, including

the separate definitions for 'borrower defense' and 'borrower defense claim'" in §§ 685.222(a)(5)–(d) and 685.300(i)(1), respectively.[2]

Young now appeals.  Before us, the parties don't dispute that Young's claims all constitute either breach-of-contract or substantial-misrepresentation claims within the meaning of § 685.222(c) and (d).  The only issue on appeal, then, is whether breach-of-contract and misrepresentation-based claims constitute "borrower defense claims" as that phrase is defined in § 685.300(i)(1).  If they do, then Young doesn't have to arbitrate because 34 C.F.R. § 685.300(f) prohibits enforcement of pre-dispute arbitration agreements for borrower-defense claims.  If they don't, then the district court was correct to compel arbitration.[3]

## II

## A

In full—once again—§ 685.300(i)(1) states that a "borrower defense claim" is

> a claim that is or could be asserted as a borrower defense as defined in § 685.222(a)(5), including a claim other than one based on

---

[2] The district court also held that Young's unjust-enrichment claim was subject to arbitration "for the same reasons as the breach-of-contract claim" and that the declaratory-judgment request failed because the court had decided to compel arbitration.  The parties on appeal debate the district court's order only as it relates to the core breach-of-contract, misrepresentation, and statutory-fraud claims.

[3] We review de novo an order granting a motion to dismiss a complaint and compel arbitration. *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011).

§ 685.222(c) or (d) that may be asserted under § 685.222(b) if reduced to judgment[.]

There's no debate about the subsection's first clause, which generally defines a "borrower defense claim" as "a claim that is or could be asserted as a borrower defense as defined in § 685.222(a)(5)"—which, in turn, generally defines "borrower defense" as "an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided."  Instead, this appeal turns on how we interpret the second, "including" clause—"including a claim other than one based on § 685.222(c) or (d) that may be asserted under § 685.222(b) if reduced to judgment."

Grand Canyon insists that, as used in § 685.300(i)(1), "including a claim other than" is a phrase of exclusion, such that breach-of-contract (§ 685.222(c)) and substantial-misrepresentation (§ 685.222(d)) claims are never "borrower defense claims" within the meaning of § 685.300(i)(1).  Young argues, by contrast, that the phrase means (1) that breach-of-contract and substantial-misrepresentation claims *are* "borrower defense claims" even if they are not reduced to judgment in accordance with § 685.222(b) and (2) that *non*-breach-of-contract and *non*-misrepresentation claims are borrower defense claims so long as they qualify under § 685.222(b).  Without much analysis of the plain meaning of § 685.300(i)(1)'s "including a claim other than" phrase, the district court adopted Grand Canyon's

10

reading.  We disagree and hold, as relevant here, that § 685.300(i)(1) includes—rather than excludes—breach-of-contract and substantial-misrepresentation claims.

**B**

**1**

We construe regulations "in much the same way we interpret statutes," so we start with the text—and, if we find it clear, we end there as well.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).  The question here is whether Young's breach-of-contract and misrepresentation claims constitute "borrower defense claim[s]" within the meaning of § 685.300(i)(1).  A plain-text reading of that regulation, we think, shows that "borrower defense claims" include both claims that "could be asserted as a borrower defense as defined in § 685.222(a)(5)" *as well as* those "based on § 685.222(c)"—*i.e.*, breach-of-contract claims—"or (d)"—*i.e.*, misrepresentation claims.  Let us explain.

The introductory word of the key clause—we think tellingly—is "including."  As its name suggests, the term "including" introduces a participial phrase of inclusion, not one of exclusion.  *See Include*, Black's Law Dictionary (11th ed. 2019) ("The participle including typically indicates a partial list."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012) ("[T]he word include does not ordinarily introduce an exhaustive list . . . .").  The phrase "including a claim other than one based on § 685.222(c) or

11

(d) that may be asserted under § 685.222(b) if reduced to judgment" simply means that subsection (c) claims (*i.e.*, those for breach of contract) and subsection (d) claims (*i.e.*, those based on substantial misrepresentations) are included, as are non-contract and non-misrepresentation claims that could be asserted as borrower defenses under subsection (b) if reduced to judgment. While § 685.300(i)(1) isn't particularly elegant, it isn't fatally ambiguous, either. We think its meaning is clear enough. After all, if the regulation said "including claims other than those based on 685.222(c) or (d)," no one would think that it excluded subsection (c) and (d) claims. Why so, then, with the language here, which is functionally identical?

In support of its exclusionary reading, Grand Canyon posits the following example: "If a person asks for 'two scoops of ice cream, including any flavor other than chocolate or vanilla,' it is clear that person is excluding chocolate or vanilla as options, not including them." Br. of Appellee at 14. But even setting aside that it omits any sort of broad definitional clause like § 685.300(i)(1)'s reference to § 685.222(a)(5), Grand Canyon's example subtly tweaks the language in a way that alters its meaning. In particular, it substitutes the word "any" for the word "a" before (in the example) the term "flavor." Section 685.300(i)(1) says that a borrower-defense claim includes "a claim"—not "any claim"—"other than one based on" subsections (c) or (d). So, back to Grand Canyon's example: If I ask for

two scoops of ice cream "including *a* flavor other than chocolate or vanilla," I could very well mean that I want at least one scoop of chocolate or vanilla.

In any event, two can play the analogy game, which can just as easily (we think more easily) undermine as support Grand Canyon's skewed reading. Consider the following counterexample, which tracks the regulatory language more precisely than Grand Canyon's: "A tort claim means a claim alleging culpable conduct resulting in personal injury, including a claim other than one based on negligent or reckless conduct." Few, if any, would think that the phrase "including a claim other than" operates to *exclude* claims based on negligent or reckless conduct. Rather, this sentence plainly means that a tort claim includes claims *in addition to* those based on negligent or reckless conduct—say, those alleging intentional wrongdoing or those predicated on strict liability.

Common sense confirms what § 685.300(i)(1)'s text clearly indicates. Grand Canyon would have us read the phrase "including a claim other than one based on § 685.222(c) or (d) that may be asserted under § 685.222(b) if reduced to judgment" to *exclude* at least two-thirds of the specified borrower defenses—and indeed, the ones most likely to underlie claims asserted by jilted borrowers, namely breach-of-contract and misrepresentation claims. Why would a regulation that all acknowledge was designed to protect student-loan borrowers exclude the most basic, heartland claims that they are likely to bring? *See generally Cal. Ass'n of*

13

*Priv. Postsecondary Sch. v. DeVos*, 436 F. Supp. 3d 333, 337–41 (D.D.C. 2020) (explaining the regulation's aim to limit schools' ability to enforce pre-dispute arbitration agreements and class-action waivers); *see also* 81 Fed. Reg. 39330, 39331 (June 16, 2016) (similar).  In short, it wouldn't, and the regulation's text demonstrates that it didn't.

## 2

Having interpreted § 685.300(i)(1)'s plain terms, we will briefly address Grand Canyon's objection that Young's (and hence our) reading renders "superfluous" the separate definitions of "borrower defense" in §685.222 and "borrower defense claim" in § 685.300(i)(1).  Essentially, Grand Canyon's criticism is that if Congress wanted to make borrower-defense claims synonymous with borrower defenses it would have drafted § 685.300(i)(1)'s definition of "borrower defense claim" to track § 685.222's definition of "borrower defense" precisely.  This criticism misses the mark for at least two reasons.

First, even if there were no daylight between the operative definitions of "borrower defense" under § 685.222 and "borrower defense claim" under § 685.300, that wouldn't render either section "superfluous."  The two sections— and their constituent definitions—address slightly different subjects and have slightly different fields of operation.  True, borrower defenses under § 685.222 end up being the bases for borrower-defense claims under § 685.300, much like an act

14

of negligence ends up being the basis for a negligence claim.  But § 685.222 borrower defenses have a stand-alone role, as well—as defenses that (under the appropriate circumstances) a borrower can assert against the Secretary of Education to resist repayment of a student loan.  Language in two separate sections of a regulation isn't superfluous merely because it overlaps.  Here, the two sections' similarity—or even identity—might make one or both of them inelegant or clunky, but it wouldn't render either of them superfluous.

Second, and in any event, there is no superfluousness issue, because under our reading § 685.300 is actually a wee bit broader than § 685.222, at least with respect to subsection (b)-type claims.  Under § 685.222(b), a borrower has a borrower defense *only if* he has obtained a favorable judgment against the school; then—but only then—he can tell the Secretary that he doesn't have to repay the loan.  Under our reading of § 685.300(i)(1), a § 685.222(b) claim needn't be reduced to judgment in order to qualify as a borrower-defense claim.  Instead, the term "borrower defense claim" includes a claim that "may be" (*i.e.*, could be) asserted as borrower defenses under § 685.222(b) if it were reduced to judgment. That is subtly, but meaningfully, different.  In short, to have a *borrower defense* under § 685.222(b), the borrower must obtain a contested judgment.  By contrast, to have a *borrower-defense claim* under § 685.300(i)(1), the borrower needn't have

15

a judgment; he need only have a claim that he *could* assert as a borrower defense under §685.222(b) if that claim had been reduced to judgment.

It's worth noting, even if only parenthetically, that Grand Canyon's reading of § 685.300(i)(1)—which seemingly would include (b)-type claims only if they are "reduced to judgment"—would risk leaving some borrowers in a bizarre infinite loop from which they couldn't escape. In order to resist mandatory arbitration, the borrower has to show that he has a borrower-defense claim. But (on Grand Canyon's reading) in order to demonstrate a borrower-defense claim— at least on a subsection (b)-type allegation—the borrower must show that he has successfully prosecuted the claim to judgment. But how can he obtain a favorable judgment if he is subject to mandatory arbitration? And so on and so on and so on.

* * *

Grand Canyon urges a reading of § 685.300 that would not only (1) exclude bread-and-butter breach-of-contract and misrepresentation claims—the claims that complaining borrowers are most likely to bring—but also (2) include non-contract and non-misrepresentation claims only if reduced to judgment, thereby rendering that aspect of the borrower-defense-claim protection meaningless. The language

16

doesn't require—or even counsel—that strained reading, and we decline to adopt it.[4]

## III

Let's recap.  We hold that § 685.300(i)(1) defines the term "borrower defense claim" to include—rather than exclude—breach-of-contract and misrepresentation claims—and, accordingly, that § 685.300(f) prohibits Grand Canyon from enforcing its pre-dispute arbitration agreement with respect to Young's claims here.  We reverse the district court's decision to the contrary,

---

[4] For the first time at oral argument, Grand Canyon asserted a new argument—namely, that even if the borrower-defense regulations apply, reading them to invalidate an otherwise enforceable arbitration agreement would contravene the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  Grand Canyon, however, has waived this argument, which it failed to present either to the district court or in its brief to us.  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate[.]").  Although an appellee may urge us to affirm on any basis supported by the record, *see Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007), it still abandons any position that it "fail[s] to list or otherwise state it as an issue on appeal."  *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A *party* fails to adequately 'brief' a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.") (emphasis added) (quotation omitted).

which granted Grand Canyon's motion to compel arbitration, and remand for further proceedings.

**REVERSED** and **REMANDED**.