**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 17, 2021**

# In the Court of Appeals of Georgia

A20A1894. GRAND CANYON EDUCATION, INC. v. WARD.

BROWN, Judge.

Grand Canyon Education, Inc. d/b/a Grand Canyon University ("GCU") appeals from the trial court's denial of its motion to dismiss or compel arbitration in this class action lawsuit filed by Lee Ward. GCU contends that the trial court erroneously concluded that certain federal regulations prohibit enforcement of the arbitration clause at issue. For the reasons that follow, we affirm.

Whether a valid and enforceable arbitration agreement exists is a question of law for the court. *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). This Court therefore reviews a trial court's order granting or denying a motion to compel arbitration de novo. Id.

This is the second time this case has appeared before this Court. In our prior opinion, *Ward v. Grand Canyon Education, Inc.*, 348 Ga. App. XXVIII (February 28, 2019) (unpublished) ("*Ward I*"), we described the relevant facts as follows:

Ward alleges that in 2015 he enrolled in an online course at GCU. GCU procured federal loans and grants on Ward's behalf. The enrollment agreement that Ward signed contained an arbitration clause stating that Ward "agree[d] that any dispute arising from [his] enrollment . . . shall be resolved by binding arbitration under the Federal Arbitration Act." After taking an online class for several weeks, Ward decided to terminate his enrollment. Thereafter, GCU notified Ward that he owed approximately $1000 in tuition, which Ward ultimately paid. GCU also sent Ward a form indicating that it had obtained over $2000 in federal grants or scholarships on his behalf.

After being contacted by a GCU recruiter, Ward decided to enroll in another online class. This time, GCU obtained over $6000 in federal loans on Ward's behalf. After attending the online class, Ward again decided to withdraw his enrollment. Ward claims that he completed an online form several times during the first week of classes indicating his desire to withdraw. However, Ward did not hear anything regarding his withdrawal request so he submitted the form again, and he was then contacted by the GCU recruiter who informed him that since he waited until after the first week of classes to withdraw from the course he was required to pay the full tuition and may also owe money to the federal government for the loans obtained on his behalf.

2

Ward filed a class action lawsuit against GCU alleging breach of contract and unjust enrichment, and seeking a declaratory judgment that certain contractual provisions were unenforceable. GCU removed the case to federal court, but the district court found that GCU's notice of removal was untimely and remanded the case back to the superior court. GCU then filed a motion to dismiss and to compel arbitration, which the superior court granted.

(Footnote omitted.) *Ward I*, slip op. at 2-3. Ward then appealed the superior court's order, contending that the "Borrower Defense Regulations," 34 CFR § 685.300 et seq. (2016), prohibited enforcement of the arbitration clause. *Ward I*, slip op. at 3. During the pendency of the appeal, a federal court held unlawful a previously-imposed stay in implementing the regulations. See *Bauer v. DeVos,* 325 FSupp.3d 74, 96 (II) (B), 101 (II) (C), 110 (II) (D) (3) (D. C. Cir. 2018). Accordingly, this Court vacated the superior court's order and remanded the case for the court to consider the effect of the Borrower Defense Regulations on GCU's motion to compel arbitration. *Ward I*, slip op. at 5.

On remand, the parties submitted supplemental briefing, and the superior court concluded that the arbitration agreement was unenforceable under the Borrower Defense Regulations. Accordingly, the superior court denied GCU's motion to dismiss and to compel arbitration. GCU obtained a certificate of immediate review,

3

and this Court granted GCU's application for interlocutory appeal.

On appeal, GCU contends that the Borrower Defense Regulations do not preclude arbitration of Ward's claims because they do not qualify as "borrower defense claims." Before turning to the issue at hand, we will assess the governing regulatory framework.

On November 1, 2016, the United States Department of Education promulgated the revised "Borrower Defense Regulations," designed to "protect student loan borrowers from misleading, deceitful, and predatory practices of, and failures to fulfill contractual promises by, institutions participating in the Department's student aid programs." 81 Fed. Reg. 75,926 (November 1, 2016). In addition to protecting student borrowers, the regulations at issue were implemented to protect taxpayer dollars, a fact borne out by the history of these regulations. The Department's 2016 amendments to the regulations resulted from government investigations establishing that Corinthian Colleges, "a publicly traded company operating numerous postsecondary schools," had "engaged in widespread misrepresentations and other abusive conduct," resulting in the Department levying a $30 million fine in 2015 against Heald, a chain owned by Corinthian. Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D.

Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39,330, 39,335, 39,382-39,383 (June 16, 2016). Days later, Heald and other Corinthian-owned schools closed and filed for bankruptcy relief, and none of the government actions against the company actually achieved affirmative recovery for Corinthian Direct Loan borrowers. Id. at 39,383-39,384. Class action lawsuits and individual suits brought by Corinthian students were barred by arbitration clauses included in the Corinthian enrollment agreements, resulting in a flood of students applying for loan relief pursuant to the Department's borrower defense regulations. Id. at 39,335, 39,383. The Department was left to redress the losses with taxpayer dollars: "If the student class actions had been able to proceed, the class actions could have compelled Heald College and the Corinthian Colleges, generally, to provide financial relief to the students. . . . Instead, impacted borrowers with Direct Loans from attendance at any of the Corinthian Colleges" were left to "obtain relief by raising the schools' misconduct as a defense to their Federal loans through the Department's current borrower defense process." Id. at 39,383.

> In response to the collapse of Corinthian Colleges,
>
> the Department [of Education] proposed amendments to the regulation

5

governing the terms of the program participation agreement, which participating institutions must agree to before their students may receive [federal] Direct Loans. Most notably, the Department proposed amending the [program participation agreement] to require institutions to agree, as a condition of participation in the Direct Loan program, to forego "the use of class action waivers" and "the use of mandatory pre-dispute arbitration" clauses in their enrollment agreements. The Department reasoned that class action waivers and predispute arbitration agreements are inconsistent with the aims of the Direct Loan program because they (1) "affect whether institutions are held accountable for acts and omissions that give rise to borrower defense claims;" [and] (2) "make it more likely that the costs of losses from those actions or omissions will be passed on to the taxpayer . . ."

(Citations and punctuation omitted.) *California Assn. of Private Postsecondary Schools v. DeVos*, 436 FSupp.3d 333, 338 (I) (A) (D. C. Cir. 2020). See also *Bauer*, 325 FSupp.3d at 80-81 (I) (A). These amendments were codified in 34 CFR § 685.222 and § 685.300 et seq., and took effect in October 2018. See 84 Fed. Reg. 9,964, 9,966 (March 19, 2019).[1]

---

[1] On September 23, 2019, the Department of Education issued a final rule rescinding the predispute class action and arbitration waiver conditions of the 2016 amendments; however, this change applies only to loans distributed on or after July 1, 2020, and therefore is not implicated in this case. See 34 CFR § 685.300 (2020). See also 84 Fed. Reg. 49,788, 49,790 (September 23, 2019). It is the 2016 version of the regulations at issue here.

Pertinently, § 685.300 provides that an institution of higher education subject to the Borrower Defense Regulations "will not . . . rely in any way on a predispute arbitration agreement with respect to any aspect of a borrower defense claim." 34 CFR § 685.300 (f) (1) (i). See also § 685.300 (e) (1) ("The school will not seek to rely in any way on a predispute arbitration agreement or on any other predispute agreement . . . with respect to any aspect of a class action that is related to a borrwer defense claim. . . ."). The regulations define a "borrower defense claim" as "a claim that is or could be asserted as a borrower defense as defined in § 685.222 (a) (5), including a claim other than one based on § 685.222 (c) or (d) that may be asserted under § 685.22 (b) if reduced to judgment[.]" 34 CFR § 685.300 (i) (1).[2]

---

[2] The regulations further require schools that had entered into predispute arbitration agreements before the effective date to "ensure the agreement is amended to contain the provision specified in paragraph (f) (3) (iii) (A) of this section or provide the student to whom the agreement applies with the written notice specified in paragraph (f) (3) (iii) (B) of this section." 34 CFR § 685.300 (f) (3) (ii). The written notice must state that the school

> agree[s] not to use any predispute arbitration agreement to stop you from bringing a lawsuit concerning our acts or omissions regarding the making of the Federal Direct Loan or the provision by us of educational services for which the Federal Direct Loan was obtained. You may file a lawsuit regarding such a claim or you may be a member of a class action lawsuit regarding such a claim even if you do not file it.

34 CFR § 685.300 (f) (3) (iii) (B).

Section 685.222 (a) (5) provides a general definition of "borrower defense[s]." "[A] 'borrower defense' refers to an act or omission of the school attended by the student that relates to the making of a Direct Loan for enrollment at the school or the provision of educational services for which the loan was provided," and can be invoked either as a "defense to repayment of amounts owed to the Secretary" or as a "right to recover amounts previously collected by the Secretary." 34 CFR § 685.222 (a) (5) (i) and (ii). Subsections (b), (c), and (d) specify three instances in which a borrower has a borrower defense. Subsection (b) provides that a borrower has a borrower defense if he "has obtained against the school a nondefault, favorable contested judgment based on State or Federal law in a court or administrative tribunal of competent jurisdiction." Id. § 685.222 (b) ("Judgment against the school"). Subsection (c) states that a borrower has a borrower defense if his or her school "failed to perform its obligations under the terms of a contract with the student." Id. § 685.222 (c) ("Breach of contract by the school"). Subsection (d) provides that a borrower has a borrower defense if the school or any of its representatives or affiliates "made a substantial misrepresentation . . . that the borrower reasonably relied on to the borrower's detriment when the borrower decided to attend, or to continue attending, the school or decided to take out a Direct Loan." Id. § 685.222 (d) (1)

8

("Substantial misrepresentation by the school").

Based on the language in § 685.300, GCU argues that claims for breach of contract and misrepresentation under § 685.222 (c) and (d), such as Ward's claims in the instant case, are expressly excluded from the categories of "borrower defense claims" covered by the regulations. Specifically, GCU interprets "including a claim other than" as a phrase of exclusion such that breach-of-contract (§ 685.222 (c)) and substantial-misrepresentation (§ 685.222 (d)) claims are never "borrower defense claims" within the meaning of 34 CFR § 685.300 (i) (1).

Ward maintains that the phrase "does not operate to exclude claims for breach of contract and misrepresentation . . . but rather clarifies that a claim other than a breach of contract or misrepresentation . . . can also be asserted." According to Ward, one cannot properly read a phrase following "including" to exclude. Thus, Ward, and the superior court, read the phrase to mean that breach-of-contract and substantial-misrepresentation claims *are* "borrower defense claims" *and* that non-breach-of-contract and non-misrepresentation are borrower defense claims so long as they could be asserted as borrower defenses under § 685.222 (b) if reduced to judgment.

Generally, courts should "construe regulations and other regulatory materials in much the same way we interpret statutes." *Washington v. Commr. of Social*

*Security*, 906 F3d 1353, 1362 (II) (B) (11th Cir. 2018). Thus, "we begin our interpretation of the regulation with its text. . . ." *Green v. Brennan*, ___ U. S. ___ (II) (136 SCt 1769, 195 LE2d 44) (2016). See also *Altamaha Riverkeeper v. Rayonier Performance Fibers*, 346 Ga. App. 269, 271-272 (816 SE2d 125) (2018) ("In construing agency regulations, we employ the basic rules of statutory construction and look to the plain language of the regulation to determine its meaning.") (citation omitted). "A regulation should be construed to give effect to the natural and plain meaning of its words. In addition, we look to the stated purpose of the regulation, as well as the broader regulatory and statutory context of which it is a part." (Citations and punctuation omitted.) *Washington*, 906 F3d at 1362 (II) (B).

Here, again, the issue turns on the regulatory definition of "borrower defense claim" as "a claim that is or could be asserted as a borrower defense as defined in § 685.222 (a) (5), *including a claim other than one based on § 685.222 (c) or (d) that may be asserted under § 685.22 (b) if reduced to judgment*[.]" (Emphasis supplied.) 34 CFR § 685.300 (i) (1). Black's Law Dictionary defines "include" as "[t]o contain as a part of something." Black's Law Dictionary (11th ed. 2019). See also 2A Sutherland Statutes and Statutory Construction § 47:7 (7th ed. 2020 update) ("The word 'includes' is usually a term of enlargement, and not of limitation.") (citation and

10

punctuation omitted). The term "'including' . . . typically indicates a partial list rather than an exhaustive one," Black's Law Dictionary (11th ed. 2019), but in some contexts may indicate an exclusive list. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 133 (2012) ("Even though the word *including* itself means that the list is merely exemplary and not exhaustive, the courts have not invariably so held.") (citation and punctuation omitted; emphasis in original). Our Supreme Court, in construing "include" and "including" as it is used in Georgia statutes, has noted that "[w]hether the term may be interpreted as one of limitation depends on the context, the subject matter, and legislative intent [as reflected by the plain meaning of the relevant text]." (Citation and punctuation omitted.) *Berryhill v. Ga. Community Support & Solutions*, 281 Ga. 439, 441 (638 SE2d 278) (2006). "Federal courts . . . often afford expansive constructions to statutes when a variant of 'include' is followed by a list of only a few items." *Premier Health Care Investments v. UHS of Anchor*, ___ Ga. ___ (3) (b) (849 SE2d 441) (decided October 5, 2020). See also *Burgess v. United States*, 553 U. S. 124, 131 (II) (A), n.3 (128 SCt 1572, 170 LE2d 478) (2008) ("[a] term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning . . . than where . . . the definition declares what a term 'means'") (citation and punctuation omitted).

11

After this appeal was docketed and the parties submitted briefs to this Court, the Eleventh Circuit Court of Appeals decided *Young v. Grand Canyon Univ.*, 980 F3d 814 (11th Cir. 2020), in which it addressed the same issue now facing this Court: whether the Borrower Defense Regulations define "borrower defense claim" to include breach-of-contract and misrepresentation claims. The Eleventh Circuit Court of Appeals reversed the district court's decision in *Carr v. Grand Canyon Univ., Inc.*, No. 1:19-cv-1707-TCB, 2019 U.S. Dist. LEXIS 194520 (N.D. Ga. Aug. 19, 2019), a case heavily relied on by GCU in the current appeal. 980 F3d at 815, 821 (III). Basing its decision on "including" being "a participial phrase of inclusion" as well as the history and purpose of the regulations, the Eleventh Circuit held "that § 685.300 (i) (1) defines the term 'borrower defense claim' to include — rather than exclude — breach-of-contract and misrepresentation claims — and, accordingly, that § 685.300 (f) prohibits Grand Canyon [University] from enforcing its pre-dispute arbitration agreement with respect to [the plaintiff's] claims here." Id. at 819-821 (II) (B) (1), (III). While we are not bound by decisions of the Eleventh Circuit construing federal law, they are persuasive. See *Levin v. State*, 346 Ga. App. 340, 344 (1) (816 SE2d 170) (2018). See also *Deen v. Stevens*, 287 Ga. 597, 601 (2) (b) (698 SE2d 321) (2010). And here, we are persuaded by the Eleventh Circuit's rationale in concluding

that "including," as it is found in § 685.300, is used in an expansive sense.

In light of the regulations' background and stated purpose of protecting student borrowers as well as taxpayer dollars, we cannot agree with GCU's exclusionary reading which would gut the regulations' protections. As the Eleventh Circuit pointed out, GCU

> would have us read the phrase "including a claim other than one based on § 685.222 (c) or (d) that may be asserted under § 685.222 (b) if reduced to judgment" to *exclude* at least two-thirds of the specified borrower defenses — and indeed, the ones most likely to underlie claims asserted by jilted borrowers, namely breach-of-contract and misrepresentation claims. Why would a regulation that all acknowledge was designed to protect student-loan borrowers exclude the most basic, heartland claims that they are likely to bring?

(Emphasis in original.) *Young*, 980 F3d at 819 (II) (B) (1). We find that reasoning sound.

GCU contends that such a reading "improperly eliminates any distinction between the separate definitions for 'borrower defense' and 'borrower defense claim,'" thus rendering the definition of "borrower defense claim" in § 685.300 meaningless. Essentially, GCU claims that if the Department of Education intended the scope of a "borrower defense claim" to be coextensive with "borrower

13

defense[s]," it would have drafted the definitions using the exact same language. However, as the Eleventh Circuit pointed out, our reading of § 685.300 is actually broader than § 685.222:

> Under § 685.222 (b), a borrower has a borrower defense only if he has obtained a favorable judgment against the school; then — but only then — he can tell the Secretary that he doesn't have to repay the loan. Under our reading of § 685.300 (i) (1), a § 685.222 (b) claim needn't be reduced to judgment in order to qualify as a borrower-defense claim. Instead, the term "borrower defense claim" includes a claim that "may be" (i.e., could be) asserted as borrower defenses under § 685.222 (b) if it were reduced to judgment. That is subtly, but meaningfully, different. In short, to have a borrower defense under § 685.222 (b), the borrower must obtain a contested judgment. By contrast, to have a borrower-defense claim under § 685.300 (i) (1), the borrower needn't have a judgment; he need only have a claim that he could assert as a borrower defense under § 685.222 (b) if that claim had been reduced to judgment.

(Emphasis omitted.) *Young*, 980 F3d at 820 (II) (B) (2). Moreover, were we to accept GCU's reading of § 685.300, a student borrower, in order to show he had a subsection (b)-type borrower defense claim and thus resist mandatory arbitration, would need to demonstrate that he had successfully prosecuted the subsection (b)-type claim to judgment. "But how can he obtain a favorable judgment if he is subject

14

to mandatory arbitration?" Id. at 821 (II) (B) (2).

In sum, we agree with the superior court's conclusion that Ward's breach-of-contract and misrepresentation claims fall within the breadth of "borrower defense claims."

GCU contends that even if Ward's claims qualify as borrower defense claims, the arbitration clause between the parties nonetheless should be enforced because § 685.300 merely governs the relationship between a school and the Department of Education and not the relationship between a school and its students. Thus, according to GCU, the provisions of § 685.300 cannot be used by Ward to undo the valid arbitration agreement.

Regardless of whether the regulations do or do not provide a basis for a student to resist a motion to compel arbitration, GCU is foreclosed from seeking to enforce the arbitration clause it publicly announced it would not enforce as to borrower defense claims, as determined by a court. As earlier noted, the regulations require schools that had entered into predispute arbitration agreements before the regulations' effective date to either amend the agreement in accordance with the regulations or to provide the student to whom the agreement applies with written notice that the school would not use a predispute arbitration agreement to stop the student from bringing or

15

joining a lawsuit concerning certain types of claims. See 34 CFR § 685.300 (f) (3) (ii), (iii).

In an apparent effort to comply with the regulations, GCU sent an email to its students with the following language:

Dear Student,

. . .

**GCU agrees not to use any predispute agreement to stop you from being part of a class action lawsuit in court or bringing a lawsuit if you assert a borrower defense claim**, as that term is defined in 34 CFR 685.300(i)(1). You may file a lawsuit, including a class action lawsuit, regarding such a claim or you may be a member of a class action lawsuit regarding such a claim even if you do not file it. This provision applies only to claims concerning our acts or omissions regarding the making of the Federal Direct Loan or the provision by us of educational services for which the Federal Direct Loan was obtained. This provision does not apply to other claims. **We agree that only the court is to decide whether a claim asserted in the lawsuit is a borrower defense claim.**

What does this mean?

Student who enrolled at GCU after June 2017 do not have arbitration agreements or class action waivers in their Enrollment Agreements. Students who enrolled prior to June 2017 may have arbitration agreements and class action waivers in their Enrollment Agreements, but **GCU will not enforce those arbitration agreements and class action waivers if the student asserts a borrower defense claim against GCU.**

(Emphasis supplied.) Given our above holding that Ward's claims qualify as borrower

16

defense claims, GCU cannot now seek to circumvent its agreement/pronouncement not to enforce arbitration agreements against a student asserting such claims.

*Judgment affirmed. Dillard, P. J., and Rickman, P. J., concur*.