[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-12564

————————————————

DONRICH YOUNG,

Plaintiff-Appellant,

*versus*

GRAND CANYON UNIVERSITY, INC.,
GRAND CANYON EDUCATION, INC.,
d.b.a.
Grand Canyon University,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-01707-TCB

————————————————

Before JORDAN and ROSENBAUM, Circuit Judges, and STEELE,[*] District Judge.

JORDAN, Circuit Judge:

In January of 2015, Donrich Young enrolled in a Doctor of Education degree program at Grand Canyon University. Mr. Young claims that he did not complete his degree because, despite representing that students can finish the program in 60 credit hours, Grand Canyon makes that goal impossible with the aim of requiring students to take and pay for additional courses. Mr. Young also claims that he was not provided with the faculty support promised by Grand Canyon necessary to complete his required dissertation. According to Mr. Young, Grand Canyon's failure to provide dissertation support is designed to require students to take and pay for additional courses that would allow them to complete the dissertation.

Mr. Young filed suit against Grand Canyon, asserting that its conduct amounted to breach of contract, intentional misrepresentation, and unjust enrichment. He also asserted that Grand Canyon violated the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522. The district court dismissed the complaint in its entirety with prejudice under Rule 12(b)(6).

---

[*] The Honorable John Steele, United States District Judge for the Middle District of Florida, sitting by designation.

Applying Arizona law, and with the benefit of oral argument, we affirm in part and reverse in part. Though Grand Canyon did not contractually promise Mr. Young that he would earn a doctoral degree within 60 credit hours, he has plausibly alleged that it did agree to provide him with the faculty resources and guidance he needed to complete his dissertation—a prerequisite to receiving the degree. Insofar as he asserts that Grand Canyon promised and failed to meaningfully provide him with the faculty support necessary to complete his dissertation, he has sufficiently alleged breach of contract and breach of the covenant of good faith and fair dealing. As for Mr. Young's other claims, we affirm the district court's dismissal.

I

Mr. Young first appeared in this case in 2019 as one of the plaintiffs in an amended complaint filed in an ongoing putative class action against Grand Canyon. The complaint sought recovery for breach of contract, violations of the Arizona Consumer Fraud Act, intentional misrepresentation, and unjust enrichment. The complaint also sought a declaratory judgment regarding certain arbitration provisions in the enrollment agreement.[1]

In the operative complaint, Mr. Young set out the following allegations, among others, in support of his various claims:

---

[1] Mr. Young is now the only remaining plaintiff.

- Grand Canyon "represents that its doctoral programs require 60 credit hours to complete" including "three dissertation courses worth three credit hours each."

- The "representation that its doctoral programs can be completed in 60 credit hours is false" because Grand Canyon "does not provide the resources needed to complete the dissertation, and therefore the doctoral program, while taking the first three dissertation courses[.]" In fact, Grand Canyon "has designed its dissertation program and requirements so that it is highly unlikely that its dissertation students can complete the program within 60 credit hours," and "provides its doctoral students with substandard instruction and guidance and an insufficient level of resources to complete dissertations on a timely basis."

- Grand Canyon's "dissertation courses are not actual academic classes, but rather a mechanism whereby students receive individualized support in their 'dissertation journey' . . . with their dissertation chair and committee members." Grand Canyon, however, fails "to ensure that a student's dissertation chair and committee members provide prompt and meaningful feedback to students regarding their dissertations and refus[es] to approve valid and methodologically sound research proposals." Indeed, Grand Canyon "intentionally understaffs doctoral committees and

disincentivizes the members from promptly offering guidance to students."

◆ As a result, Grand Canyon "doctoral students must then enroll in additional courses to complete their dissertation."

◆ Grand Canyon's "faculty failed to provide [Mr. Young] prompt and meaningful feedback regarding his dissertation" and "the necessary guidance and resources have not been made available such that his dissertation could have been completed on a timely basis." As a result, he was required to enroll in and pay for "at least three continuation courses during his pursuit of a doctoral degree."

D.E. 10 at ¶¶ 19, 20, 42, 49, 68–71.

Grand Canyon filed a motion to dismiss the complaint and a motion to compel arbitration. The district court granted the motion to compel arbitration, but we reversed and remanded as to several of Mr. Young's claims. *See Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 821 (11th Cir. 2020) (*Young I*). After adopting our decision in *Young I* as its own, the district court denied Mr. Young's motion for default judgment and granted Grand Canyon's motion to dismiss all of the remaining claims. Mr. Young timely filed this appeal.

## II

We exercise plenary review of the dismissal of a complaint for failure to state a claim. *See Dorfman v. Aronofsky*, 36 F.4th 1306, 1311-12 (11th Cir. 2022). In conducting that review, we

accept the factual allegations in the complaint as true and construe them in the light most favorable to Mr. Young. *See id.* at 1310.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the factual allegations in the complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted).

The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). We ask, therefore, whether a claim is "substantive[ly] plausib[le]." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

## III

Mr. Young challenges the district court's dismissal of two breach of contract claims. The first claim is that Grand Canyon designed its doctoral program such that students cannot complete the program and obtain their degree in 60 credit hours, despite contractual promises to the contrary. The second claim is that Grand Canyon failed to provide doctoral candidates with the faculty support necessary to complete a dissertation, as promised. Grand

Canyon argues, as it did below, that Mr. Young's breach of contract claims fail because he cannot point to any specific contractual provisions making either promise.

## A

The majority view seems to be that the "relationship between a student and college or university is essentially contractual in nature, but the relationship has unique qualities that require courts to construe the contract in a manner that leaves the administration broad discretion to meet its educational and doctrinal responsibilities." 14A C.J.S. Colleges and Universities § 30 (Nov. 2022 update) (citing cases). As the Seventh Circuit put it decades ago, "[i]t is held generally in the United States that the 'basic regal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract.' Indeed, there seems to be 'no dissent' from this proposition." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (citations omitted).[2]

As might be expected, the "elements of a prima facie case for breach of contract against an educational institution for failure to deliver on specific promises or representations vary from state to state." Elizabeth O'Connor Tomlinson, 62 Causes of Action

---

[2] The majority view is not unanimous today, but that lack of unanimity does not matter here because—as we will explain—Arizona follows the majority view.

Second Series 331, Cause of Action for Breach of Contract Against Educational Institution for Failure to Deliver on Specific Promises and Representations § 4 (2014 & Nov. 2022 update). In the specific realm of graduate (i.e., masters and doctoral) studies, some states are more receptive to breach-of-contract claims than others. *Compare, e.g., Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 170–71 (Miss. 2004) (upholding jury verdict, under Mississippi law, in favor of doctoral student on breach of contract claim based in part on university's failure to provide faculty guidance and advice), *with, e.g., Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1035–36 (8th Cir. 2019) (affirming, under Missouri law, dismissal of breach of contract claims by doctoral student based in part on university's alleged failures to timely assign a faculty advisor and provide an annual faculty advisor review because those matters were not enforceable promises).

The parties agree that Arizona law governs Mr. Young's claims against Grand Canyon. As a general matter, Arizona law permits breach of contract claims by students against colleges and universities. *See, e.g., Snyder v. Ariz. Bd. of Regents*, No. 1 CA-CV 14-0536, 2015 WL 7777075, at *4 (Ariz. App. Dec. 3, 2015) (affirming summary judgment against student on breach of contract claim because university had fulfilled its oral contract to discuss possible admission if student raised his GPA); *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1096–97 (D. Ariz. 2021) (holding that students plausibly pled breach of contract claim against university related to housing costs and fees by alleging that

university chose to close campus due to COVID-19 pandemic and told students not to return); *Little v. Grand Canyon Univ.*, 516 F. Supp. 3d 958, 964–65 (D. Ariz. 2021) (similar to *Hannibal-Fisher*).

Under Arizona law, a breach of contract claim requires the existence of a contract, a breach of the contract's terms, and resulting damages. *See First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016) (citing *Graham v. Alsbury*, 540 P.2d 656, 657 (Ariz. 1975)). We turn, therefore, to whether Mr. Young has plausibly alleged these elements.

Mr. Young has sufficiently alleged a general contractual relationship between himself and Grand Canyon. *See* D.E. 10 at ¶¶ 97–113 ("[Mr. Young] and [Grand Canyon] have contracted for educational services"). He also identifies the agreements at play: his Enrollment Agreement, the Academic Catalog, the Policy Handbook, and the Dissertation Milestone Table. *See id.* at ¶¶ 11, 99, 102 (alleging that "the relevant terms of [Grand Canyon]'s contracts are materially the same for all students," that "[s]tudent policies—which are expressly incorporated in the student agreement—are also the same for all doctoral students," and that "[a]ccording to [the] Academic Catalog, [Grand Canyon is] responsible for, among other things, assessing students' needs for support services and providing support throughout the doctoral process"). And he has alleged that he "sustained damages as a result of [Grand Canyon's] breaches of the agreement[.]" *Id.* at ¶ 113.

The question, then, is whether Mr. Young has plausibly pled that Grand Canyon breached any promises made to him. With

respect to the claim relating to the completion of the doctoral degree in 60 credit hours, he has not.  But as to the claim relating to the failure to provide faculty support for his dissertation, he has.

### 1

We start with Mr. Young's claim that Grand Canyon breached the contract because it designed its doctoral program to make it impossible for students to complete the program and obtain their degree in 60 credit hours, despite representations and contractual promises to the contrary.  In essence, Mr. Young asserts that Grand Canyon's Enrollment Agreement and Academic Catalog reflect that a student will complete his doctoral degree program in no more than 60 credit hours.  *See* D.E. 10 at ¶¶ 29–31.  According to Mr. Young, a "closer review" of Grand Canyon's Dissertation Milestone Table "shows that it is impossible to complete the program within only [60] credit hours."  *Id.* at ¶ 31.

For context, the Dissertation Milestone Table is part of Grand Canyon's Policy Handbook and helps students plan a potential path to completion of the doctoral degree program.  *See* D.E. 13-4 at 204–05.  We insert it here for ease of reference:

| Review Levels and Final Approval | Learner Submitted Document(s) for Review | GCU Dissertation Form Required | Reviewing and/or Approval Authority | Optimal Progression Point | Minimum Progression Point |
|---|---|---|---|---|---|
| Level 1 Review: Prospectus Review and Recommendation | • 10 Strategic Points <br> • Research Prospectus | No Form Required, just consensus with committee. | Chair and Methodologist | RES-885 <br> PSY-825 <br> RES-871 | DIS-955 <br> PSY-955 <br> DBA-955 |
| Level 2: Proposal Review and Recommendation by Academic Quality Review (AQR) Reviewer for Proposal Defense Conference Call | • Committee Reviewed Dissertation Proposal (Chapters 1-3) with Scored Criteria Tables <br> • Committee Reviewed Dissertation Proposal (Chapters 1-3) without Criteria Tables | No Form: Email sent with AQR Reviewer's approval for Defense Call | Chair loads required documents to initiate this review. <br> Dissertation Committee <br> AQR Reviewer | DIS-955 <br> PSY-955 <br> DBA-955 | DIS-960 <br> PSY-960 <br> DBA-960 |
| Level 3 Review: Proposal Defense and Dissertation Committee Approval of Proposal | • Level 2 AQR Approved Dissertation Proposal (Chapters 1-3) <br> • Updated 10 Strategic Points document <br> • Dissertation Proposal PowerPoint Presentation for Defense Call | D-35 - AQR Dissertation Proposal Approval | Dissertation Committee | DIS-960 <br> PSY-960 <br> DBA-960 | DIS-965 <br> PSY-965 <br> DBA-965 |
| Level 4 Review: Institutional Review Board (IRB) Review and Approval | • Completed GCU D-35 Form <br> • Approved Research Prospectus <br> • Updated 10 Strategic Points document <br> • Committee Approved Dissertation Proposal (Chapters 1-3) Clean Copy <br> • Data Collection Instruments <br> • Site Approvals <br> • Final IRB documents (updated from Level 2/3 reviews by the Learner/approved by Chair if applicable) | D-50 – Approval to Conduct Research | IRB Director <br> Learner loads required documents into IRB system. Chair approves and submits documents from IRB system to initiate this review. | DIS-960 <br> PSY-960 <br> DBA-960 | DIS-966 <br> PSY-966 <br> DBA-966 |
| Review Levels and Final Approval | Learner Submitted Document(s) for Review | GCU Dissertation Form Required | Reviewing and/or Approval Authority | Optimal Progression Point | Minimum Progression Point |
| Level 5 Review: AQR Review and Recommendation for Dissertation Defense Conference Call | • Committee Reviewed Dissertation Manuscript (Chapters 1-5) with Scored Criteria Tables <br> • Committee Reviewed Dissertation Manuscript (Chapters 1-5) without Criteria Tables | No Form: Email sent with AQR Reviewer's approval for Defense Call | Chair loads required documents to initiate this review. <br> Dissertation Committee <br> AQR Reviewer | DIS-960 <br> PSY-960 <br> DBA-960 | DIS-967 <br> PSY-967 <br> DBA-967 |
| Level 6 Review: Dissertation Review and Recommendation by Full Committee for Level 7 Review | • Level 5 AQR Approved Dissertation Manuscript (Chapters 1-5) <br> • Dissertation PowerPoint Presentation | D-65 – AQR Dissertation Defense Approval | Dissertation Committee | DIS-965 <br> PSY-965 <br> DBA-965 | DIS-968 <br> PSY-968 <br> DBA-968 |
| Level 7 Review: Form/Format Review & Approval Recommendation of Dissertation for Level 8 Review | • Committee and AQR Approved) Dissertation with all final editing and revisions from Dissertation Defense completed and approved by Chair <br> • Form and Format Checklist Completed by Learner and Reviewed/Signed by Chair <br> • IRB Closeout Form | D-75 – Form and Format Approval of Dissertation | Chair loads required documents to initiate this review. <br> Form & Format Reviewer | DIS-965 <br> PSY-965 <br> DBA-965 | DIS-970 <br> PSY-970 <br> DBA-970 |
| Level 8 Review: Dean's and Final Approval of Dissertation | • Final Dissertation Manuscript for Dean's Approval and Signature | D-80 – Final Approval and Dean's Signature on Manuscript | Chair submits required documents for Dean's Review to initiate this review <br> Dean, College of Doctoral Studies Director, Office of Academic Research | DIS-965/ After courses completed. <br> PSY-965/ After courses completed <br> DBA-965/ After courses completed | DIS-970/ After courses completed. <br> PSY-970/ After courses completed. <br> DBA-970/ After courses completed. |
| ProQuest Publication | • PDF of Dean Signed Dissertation Manuscript with Signature Page Inserted | | CDS administrative staff | After courses completed. | After courses completed. |

*Id.* The column furthest to the left lists the various "levels" a student will progress through when attempting to complete his doctoral degree program. *See id.* Each level lists the courses necessary to progress to the next level, as well as the documents and benchmarks expected of a doctoral degree candidate. *See id.*

At issue are the two columns furthest to the right: the "Optimal Progression Point" column and the "Minimum Progression Point" column. *See id.* As Mr. Young reads the Dissertation Milestone Table, the Minimum Progression Point column reflects that it is impossible to complete the program in 60 credit hours because it shows that "at a minimum" a doctoral candidate must complete "one 'research continuation' course just to reach level four (of eight) of the dissertation review process. In order to reach dissertation review level eight, required for publication and graduation, the student must, at a minimum, have completed all five of the 'research continuation' courses." D.E. 10 at ¶ 32.

But the Optimal Progression Point column tells a different story. *See* D.E. 13-4 at 204–05. It reflects the fastest degree track that enables a student to complete the degree program, and can, at least in theory, be completed in 60 credit hours. *See id.* Put another way, the Optimal Progression Point column represents the *earliest* point at which a student can progress through each review level. The Minimum Progression Point column, in contrast, reflects the *latest* a student can progress through each level.

Mr. Young fails to point to any provision in any of the relevant documents promising that a student will complete his

doctoral degree program in 60 (and no more than 60) credit hours. This is because the documents belie any such promise. For example, the Enrollment Agreement states that "[a] *minimum* of 60 credits are required for completion of this program of study." D.E. 13-4 at 9 (emphasis added). And the fast track reflected in the Optimal Progression Point column of the Dissertation Milestone Table is not guaranteed. *See* D.E. 13-4 at 204–05. It merely reflects a potential path to completion if a doctoral candidate puts forth maximum effort and succeeds at each relevant stage. *See id.* Mr. Young cannot state a claim for breach of contract on his 60-hour theory absent language promising such an outcome. *See Hannibal-Fisher*, 523 F. Supp. 3d at 1094–95 (student's breach of contract claim, which was based on university's failure to provide in-person instruction during COVID-19 pandemic, failed because (1) the enrollment agreement "d[id] not guarantee any set format for . . . classes" and (2) the university retained the right to make changes of "any nature" to its class offerings). *Cf. Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959) (clause in agreement stating that contractor "'may at his option' do certain things . . . does not provide that he may not do anything else").

2

We come to a different conclusion on Mr. Young's claim that Grand Canyon failed to provide him with the faculty support it promised he would receive (e.g., from a dissertation chair and a dissertation committee) for his dissertation as part of the doctoral degree program. Though Grand Canyon is not obligated to ensure

that doctoral students complete their required coursework within a designated time frame, Mr. Young has plausibly alleged that it has promised to provide students with the faculty resources necessary to complete their degree.

In his complaint, Mr. Young points to several portions of the Academic Handbook and Course Catalog—both documents incorporated by reference into the Enrollment Agreement—that promise to make available resources that he alleges Grand Canyon failed to provide.  In the Dissertation Milestone Table, the "Reviewing and/or Approval Authority" column reflects that a doctoral candidate should expect to have his work reviewed and approved by a dissertation committee, dissertation chair and methodologist, and a director of the Institutional Review Board.  *See* D.E. 13-4 at 204. And the three required dissertation courses listed on Mr. Young's enrollment agreement—as part of the minimum 60 credit hours— are described in the Academic Catalog as allowing students "to work directly with their dissertation chair and committee members[.]"  D.E. 10 at ¶ 22.  The Policy Handbook, for its part, states in no uncertain terms that a doctoral degree program is interactive and does not just consist of attending classes and passing exams:

> There are a total of five review cycles in the Proposal Peer Review Process, two preliminary review cycles and three full review cycles.  At the onset of the Level 2 review process, the Academic Quality Reviewer may return the document to the learner up to two times, if [the] document is not sufficiently developed. After the two preliminary reviews, the learner must

receive proposal approval within the three subsequent full review attempts.  Failure to obtain approval on the third and final AQR will prevent the learner from progressing further in the doctoral program.

D.E. 13-4 at 95.  In other words, faculty interaction, support, and review of a candidate's dissertation work is a critical part of the doctoral degree program. Indeed, Grand Canyon states in its Policy Handbook that "[i]t is important for the doctoral learner and dissertation chair to establish a clear understanding of the expectations of working together, how each will communicate with the other, and how they will establish a timeline for completion of the dissertation milestone steps[.]"  *Id.* at 94.  Such cooperation is not possible if faculty support is not made meaningfully available.

Based on these allegations, we conclude that Mr. Young has plausibly alleged a promise by Grand Canyon to provide faculty support and review for the dissertation work of doctoral students. A doctoral degree program—which requires the approval, completion, and defense of a dissertation at Grand Canyon—is interactive in nature, and requires that faculty members (e.g., a dissertation chair or a review committee) be available to discuss, review, and critique the work of the student.  Grand Canyon contends that Mr. Young has not pointed to any specific provisions which guarantee meaningful faculty availability and support, but based on the provisions quoted above we disagree.

Mr. Young has also sufficiently alleged breach. He claims that Grand Canyon failed "to ensure that its dissertation chairs and committee members provide students with prompt and meaningful feedback regarding their dissertations," and that it "intentionally understaffs doctoral committees and disincentivizes the members from promptly offering guidance to students." If Grand Canyon did not provide Mr. Young with the faculty support necessary to progress through the levels in the Dissertation Milestone Table, as he alleges, the complaint plausibly alleges that it breached its agreement with him.

The district court noted that Mr. Young had failed to allege detailed facts "demonstrating how or when he was denied feedback and [faculty] support." D.E. 43 at 10. That may be so, but the failure is not fatal. First, the Supreme Court has told us that the plausibility standard "does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (post-*Twombly* case stating that "specific facts are not necessary"). "Having informed [Grand Canyon] of the factual basis for [his] complaint, [Mr. Young] w[as] not required to do more to stave off threshold dismissal for want of an adequate statement of his claim." *Johnson*, 574 U.S. at 12. Second, a plaintiff needs to plead the who, what, when, where, and how regarding a claim only when Rule 9(b)'s heightened pleading standard applies. *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). When a plaintiff "does not aver fraud, . . . his allegations need not satisfy

Rule 9(b)." *Vess v. Ciba-Ceigy Corp. USA*, 317 F.3d 1097, 1105 (11th Cir. 2003). Breach of contract claims do not sound in fraud, so Rule 9(b) does not apply.

## B

We next turn to Mr. Young's claims for breach of the covenant of good faith and fair dealing. Those claims mirror his breach-of-contract claims, as he alleges that Grand Canyon violated the covenant by "failing to offer a reasonable opportunity to complete dissertations during the initial 60-credit hour period" and "refus[ing] to provide meaningful guidance to its doctoral students." D.E. 10 at ¶ 110. Mr. Young argues that his good faith and fair dealing claims survive because Grand Canyon prevented him from receiving the benefits of their agreement.

"Arizona law implies a covenant of good faith and fair dealings in every contract," and this covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 38 P.3d 12, 28 (Ariz. 2002) (en banc). *See also Zancanaro*, 339 P.2d at 749 ("An implied promise arising out of the expressed provisions of [a] contract is as much a part of the contract as the written one, and is subject to the same penalties for breach."). The implied covenant of good faith and fair dealing is breached when "a party denies the other party the 'reasonably expected benefits of the agreement.'" *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, __ F.

Supp. 3d __, 2022 WL 1540094, at *14 (D. Ariz. May 16, 2022) (quoting *Nolan v. Starlight Pines Homeowner's Ass'n*, 167 P.3d 1277, 1284 (Ariz. App. 2007)). *See also* The Scope of Contractual Obligations—Covenant of Good Faith and Fair Dealing, 9 Ariz. Prac. Business Law Deskbook § 7:25 (2021–2022 ed.) (explaining that the covenant acts "so that neither party may act or will act to impair the right of the other to receive the benefits that flow from their contractual relationship").

"The duty of good faith extends beyond the written words of the contract[.]" *Wells Fargo Bank*, 38 P.3d at 29. So a party may breach the covenant of good faith and fair dealing "by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. App. 2002). For example, in *Rawlings v. Adopaca*, 726 P.2d 565, 568 (Ariz. 1986) (en banc), the Arizona Supreme Court determined that an insurance company breached the covenant of good faith and fair dealing without breaching the policy. In that case, a fire had damaged the farmhouse of David and Elizabeth Rawlings, and the fire was believed to have been negligently caused by the Adopacas, a family living nearby. *See id.* One insurance company insured both the Rawlingses (under a homeowners insurance policy) and the Adopacas (under a policy potentially covering their liability for damages to the Rawlingses' farmhouse in the fire). *See id.* The insurance company sent the Rawlingses a check for the $10,000 policy limit but refused to provide them with its

investigative report regarding the origination of the fire unless the Rawlingses agreed to pay for half of the report's cost. *See id.* The Arizona Supreme Court held that the insurance company's failure to provide the report violated the covenant of good faith and fair dealing, even though the company paid the Rawlingses the policy limits they were contractually entitled to. It reasoned that "the [Rawlingses] would clearly have been better off without any insurance if by paying $10,000 the insurer could prevent the insured's recovery of the larger portion of the loss." *Id.* at 570–71.

Applying these principles here, whether Grand Canyon breached the implied covenant of good faith and fair dealing depends on the "reasonably expected benefits" of its agreement with Mr. Young and whether Grand Canyon deprived Mr. Young of those benefits. To determine the benefits that the parties would expect to flow from the contract, we look to the agreement itself. *See id.* at 570 (citing *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040–41 (Ariz. 1985)).

As discussed above, Grand Canyon did not promise Mr. Young that he would complete his doctoral degree program in no more than 60 credit hours. Rather, Grand Canyon represented that 60 credit hours is the fastest a doctoral student can possibly complete his or her degree. *See* D.E. 13-4 at 204-05. Finishing on the fastest possible track is not a guarantee or a reasonably expected benefit of the contract, and therefore the 60-hour theory of breach of the implied covenant of good faith and fair dealing fails. *See Wagenseller*, 710 P.2d at 1040–41 (termination without good cause

did not breach the implied covenant of good faith where the terminated employee had an at-will employment contract, which has "no promise of continued employment").

Mr. Young's other theory—that Grand Canyon breached the covenant of good faith and fair dealing by failing to meaningfully provide the faculty support and guidance necessary to complete the dissertation—fares better. Completing one's dissertation is a reasonably expected benefit of a doctoral degree program. Indeed, a dissertation is a requirement of Grand Canyon's doctoral degree program. Grand Canyon cannot accept tuition from Mr. Young, enroll him in the doctoral degree program, and then fail (as alleged) to give him the faculty support necessary to complete the program's requirements.

Grand Canyon argues that the covenant of good faith and fair dealing claim should be dismissed because (1) it is duplicative of the breach-of-contract claim and (2) it is barred by the educational malpractice doctrine. Both of these arguments are briefly raised by Grand Canyon for the first time in its answer brief and were not asserted against the operative complaint in the district court. *See generally* D.E. 13, 19, 22, 43. We therefore decline to consider them. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (internal quotation marks and citations omitted).

**IV**

21-12564                Opinion of the Court                21

Mr. Young argues that the district court erred by applying a heightened pleading standard to, and then dismissing, his claims for intentional misrepresentation and violations of the Arizona Consumer Fraud Act. We disagree.

Claims that sound in fraud must comply not only with the plausibility standard articulated in *Twombly* and *Iqbal*, but also the heightened pleading requirements of Rule 9(b). *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). We turn, therefore, to the elements of an ACFA claim.

The ACFA prohibits

[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression[,] or omission of any material fact with intent that others rely on such concealment, suppression[,] or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damages thereby[.]

Ariz. Rev. Stat. § 44–1522. To plead an ACFA violation, a plaintiff must allege "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. App. 1983)).

Mr. Young asserts that the district court erred in applying a heightened pleading standard to his ACFA claim because his theory

of recovery does not rest upon one course of fraudulent conduct, but rather relies on "statements that misrepresent the amount of time it actually takes to complete the doctoral program." Appellant's Br. at 23. Mr. Young cites *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1335 (N.D. Ga. 2019), but that case is inapposite because it involved claims related to a consumer data breach. He also asserts that his claims "are not about fraud" and "in fact, they do not resemble fraud at all[.]" Appellant's Br. at 23.

We are not persuaded. Mr. Young's ACFA claim is based on allegations that he relied on Grand Canyon's intentional misrepresentations to his own detriment. Like the district courts which have addressed the matter, we hold that Rule 9(b) applies to an ACFA claim because such a claim sounds in fraud. *See, e.g., Physicians Surgery Ctr. v. Cigna Healthcare Inc.*, ___ F. Supp. 3d ___, 2022 WL 2390948, at *6 (D. Ariz. Jul 1, 2022); *Charlie v. Rehoboth McKinley Christian Health Servs.*, ___ F. Supp. 3d ___, 2022 WL 1078553, at *13 (D.N.M. April 11, 2022); *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 643-44 (D. Ariz. 2001).

In the alternative, Mr. Young argues that he did in fact plead with sufficient particularity under Rule 9(b) to survive a motion to dismiss as to his ACFA and intentional misrepresentation claims. As we have explained:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were

made, and (2) the time and place of each such state-
ment and the person responsible for making (or, in
the case of omissions, not making) same, and (3) the
content of such statements and the manner in which
they misled the plaintiff, and (4) what the defendants
obtained as a consequence of the fraud.

*Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir.
2007) (internal quotation marks omitted). "A bare allegation of re-
liance on alleged misrepresentations, bereft of any additional detail,
will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*,
941 F.3d 1116, 1128 (11th Cir. 2019).

Mr. Young alleged that Grand Canyon violated the ACFA
through a "pattern of misrepresentations and omissions" that led
him to believe he could complete the Grand Canyon's doctoral
program in 60 credit hours. *See* D.E. 10 at ¶¶ 114–24. He also
alleged that Grand Canyon intended for him to rely on these mis-
representations so that he would "choose to enroll in a Grand Can-
yon doctoral program instead of a comparable program offered by
another institution that could be completed in less time and for less
money." *Id.* at 39. As a result, he claims he was "consequently and
proximately injured by G[rand Canyon]'s misrepresentation" be-
cause he "paid for more credit hours than [he] would have else-
where . . . without receiving any benefit from those hours." *Id.* at
40. His intentional misrepresentation claim relies on essentially the
same allegations. *See id.* at 40–43.

Mr. Young's generalized assertions are not enough to satisfy the who, what, when, where, and how required by Rule 9(b). We have already held that the complaint does not sufficiently allege that Grand Canyon contractually promised Mr. Young that he would finish the doctoral degree in 60 hours, and Mr. Young does not point to any other precise statements, documents, or misrepresentations, much less the time, place, and person making them. *See Tello*, 494 F.3d at 972. The ACFA and intentional misrepresentation claims therefore fail under Rule 9(b).

## V

Mr. Young asserts that the district court abused its discretion when it denied his motion for default judgment and concluded that Grand Canyon's motion to dismiss was directed at his claims. We review a district court's decision to deny a motion for default judgment for abuse of discretion, *see Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002), and see no error here.

When Grand Canyon filed the motion to dismiss the initial class action complaint, it took the position that Mr. Young was bound by an arbitration provision and, in the event the district court held otherwise, the complaint should be dismissed for the reasons contained in the motion as to other plaintiffs. Grand Canyon conveyed as much in a footnote:

> [Grand Canyon's] motion to dismiss is directed at the claims asserted by Plaintiff Kolb and Jane Does I, II and III. Plaintiffs Carr, Stanton, and Young are

21-12564            Opinion of the Court            25

required to submit their claims to arbitration, pursuant to their signed enrollment agreements. Accordingly, [Grand Canyon] filed a Motion to Compel Arbitration as to Plaintiffs Carr, Stanton, and Young. *If the Court determines that those Plaintiffs are not required to arbitrate their claims, then their claims should also be dismissed for the reasons stated herein.*

D.E. 13-1 at 4 n.5 (emphasis added).

The district court granted Grand Canyon's motion to compel arbitration as to Mr. Young and the motion to dismiss as to the remaining plaintiffs. Mr. Young appealed the order granting the motion to compel arbitration and we reversed and remanded his case for further proceedings. *See Young I*, 980 F.3d at 821.

A month after the district court adopted our mandate in *Young I* as its own judgment, Mr. Young filed a motion seeking entry of default judgment against Grand Canyon. He asserted that Grand Canyon had failed to file a responsive pleading to his complaint within 14 days of the district court's adoption of our decision, as required by Rule 12(a)(4). In its response, Grand Canyon argued there was no valid basis for entry of default because the district court had yet to rule on its motion to dismiss as to Mr. Young's claims. In particular, Grand Canyon pointed to the footnote in its motion to dismiss, which said that "[i]f the Court determines that [Mr. Young] is not required to arbitrate [his] claims, then [his] claims should also be dismissed for the reasons stated [t]herein." D.E. 13-1 at 4 n. 5.

The district court denied Mr. Young's motion for entry of default judgment, finding that Grand Canyon's motion to dismiss was still pending as to Mr. Young's claims. We agree with the district court's assessment.

First, as a practical matter, the footnote in Grand Canyon's motion to dismiss clearly advised the district court that, in the event it denied the motion to compel arbitration, the substantive arguments in the motion to dismiss applied to the claims of all the plaintiffs—including Mr. Young. That is precisely what occurred. The district court entered our mandate in *Young I*, effectively denying Grand Canyon's motion to compel arbitration against Mr. Young as to several of his claims, and turned back to the pending motion to dismiss to address Grand Canyon's arguments regarding Mr. Young's remaining claims.

Second, the entry of default judgment is within the discretion of the district court and is intended to sanction litigants for failure to prosecute a case with reasonable diligence, comply with the district court's orders, or with the rules of procedure. *See Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 887 (5th Cir. 1968). Our cases teach that default judgment is a "drastic remed[y] which should be used only in extreme situations[.]" *Id.* It is disfavored because it deprives a litigant of his day in court. *See Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). There is no indication that Grand Canyon failed to preserve its arguments, adequately prosecute the case, or comply with any orders. Accordingly, the

21-12564                Opinion of the Court                27

district court did not abuse its discretion in denying Mr. Young's request for entry of default judgment.

## VI

Finally, we address Mr. Young's unjust enrichment claim. In the complaint, Mr. Young pled in the alternative that Grand Canyon was unjustly enriched by his tuition payments for research continuation courses. The district court dismissed this claim because, among other things, Mr. Young failed to appeal its earlier ruling that the unjust enrichment claim was subject to arbitration and our decision in *Young I* reversing its order compelling arbitration was therefore limited to his breach of contract, misrepresentation, and ACFA claims.

Mr. Young claims that there is "no validity" to the district court's holding that our decision in *Young I* did not apply to his unjust enrichment claim because he "appealed the district court's arbitration order in its entirety." Appellant's Br. at 26. The latter point may be correct, but—as Grand Canyon pointed out to the district court and to us—the inquiry into whether his unjust enrichment claim was properly before us on the last go around does not end at the notice of appeal.

We have long held that "a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate[.]" *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). *See also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately brief a claim when he

does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims") (internal quotation marks omitted). A party who fails to squarely raise a claim in its brief therefore abandons that claim. *See Sapuppo*, 739 F.3d at 681 (holding that a party "abandons a claim even when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority").

Mr. Young's briefs in *Young I* did not mention unjust enrichment at all. We noted as much in a footnote:

> The district court also held that [Mr.] Young's unjust-enrichment claim was subject to arbitration "for the same reasons as the breach-of-contract claim" and that the declaratory-judgment request failed because the court had decided to compel arbitration. *The parties on appeal debate the district court's order only as it relates to the core breach-of-contract, misrepresentation, and statutory-fraud claims.*

980 F.3d at 817 n.2 (emphasis added). We explained, therefore, that "[t]he only issue on appeal [with respect to arbitration] . . . [was] whether breach-of-contract and misrepresentation-based claims constitute 'borrower defense claims[.]'" *Id.* at 817. Unjust enrichment, which is an equitable remedy under Arizona law, *see Span v. Maricopa Cnty. Treasurer*, 437 P.3d 881, 886 (Ariz. App. 2019), is not a breach of contract or misrepresentation claim.

If Mr. Young thought that he had properly appealed the district court's decision to compel arbitration as to his unjust

enrichment claim, he should have filed a petition for panel rehearing noting his objection to our characterization of his arguments. *See* Fed. R. App. P. 40(1), (2) ("a petition for panel rehearing may be filed within 14 days after entry of judgment" and "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended"). He did not do so, and our mandate in *Young I* is the law of the case.

In sum, Mr. Young's unjust enrichment claim remains subject to the district court's order on Grand Canyon's motion to compel arbitration. The district court properly dismissed that claim.

## VII

We affirm the district court's dismissal of Mr. Young's claims for violations of the ACFA, intentional misrepresentation, and unjust enrichment. We reverse in part the dismissal of Mr. Young's claims for breach of contract and breach of the covenant of good faith and fair dealing and remand for further proceedings.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.